# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### SEPTEMBER 1998 SESSION



FILED

**November 20, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

STATE OF TENNESSEE,                )
                                   )   C.C.A. No. 02C01-9711-CR-00443
            Appellee,              )
                                   )   Shelby County
V.                                 )
                                   )   Honorable W. Fred Axley, Judge
**RECO R. DOUGLAS,**               )
                                   )
            Appellant.             )   (First-degree felony murder)


FOR THE APPELLANT:                     FOR THE APPELLEE:


A C Wharton                            John Knox Walkup
Shelby County Public Defender          Attorney General & Reporter

Tony N. Brayton                        Marvin E. Clements, Jr.
Assistant Public Defender              Assistant Attorney General
201 Poplar Avenue, Suite 201           425 Fifth Avenue North
Memphis, TN 38103                      Nashville, TN 37243
    (on appeal)
                                       William L. Gibbons
Trent R. Hall                          District Attorney General
Assistant Public Defender
201 Poplar St., Ste. 2-01              Edgar A. Peterson IV
Memphis, TN 38103                      Assistant District Attorney General
    (at trial)                         201 Poplar Avenue, Suite 301
                                       Memphis, TN 38103



OPINION FILED:_____



**REVERSED AND REMANDED FOR A NEW TRIAL**


**PAUL G. SUMMERS,**
Judge

## O P I N I O N

The defendant was charged with first-degree murder during the perpetration of a robbery and convicted of that offense by a jury. He was sentenced to life imprisonment. In this direct appeal the defendant raises the following issues:

> 1. Whether the trial court erred in its instruction to the jury on release eligibility dates;
>
> 2. Whether T.C.A. § 40-35-201(b)(2)(A)(I) (1997) is unconstitutional; and
>
> 3. Whether the evidence is sufficient to support the verdict.

The state correctly concedes that this case must be reversed and remanded for a new trial because the trial court committed reversible error in its instruction to the jury on release eligibility dates.

### FACTS

According to the defendant's statement to the police, he and a friend named Dion decided on December 3, 1994, to rob "[a]nybody we see with something." They saw the victim's apartment door open and entered it. The victim, Jack Rouse, "ran towards Dion" and the defendant shot him once in the stomach with a sawed-off .410 shotgun. Dion then took the gun and hit Rouse in the head with the gun barrel. The two assailants then took approximately nine dollars in change and the victim's beeper and ran out of the apartment.

Other proof established that the victim called his neighbors and 911. The police and emergency medical personnel arrived and the victim was taken to the hospital. He subsequently bled to death from a severed aorta caused by the shotgun wound to the abdomen. Fifteen shotgun pellets were recovered from Rouse's abdomen.

Several days later the police found the defendant, recovered the victim's beeper from his person and took his statement. The defendant's ex-girlfriend testified at trial that the defendant had also confessed the murder and robbery to her after he was in jail.

## ANALYSIS

The defendant first contends that the trial court erred in its instruction to the jury on parole eligibility dates.[1] The trial court instructed the jury as follows:[2]

> The jury will not attempt to fix any punishment or sentence for [the defendant's] offenses. However, for your information only, you are informed that the [range] of punishment as to . . . Murder in the First Degree During the Perpetration of a Robbery [is] imprisonment for life with parole.
>
> . . .
>
> You are further informed that the minimum number of years a person sentenced to imprisonment for [this offense] must serve before reaching the earliest release eligibility date (RED) is:
>
> . . .
>
> RED %                                   30%
> RED % Applied                           4.50 years
> W[ith] Max[imum] Credits                2.95 years
> Safety Valve                            2.70 years
> Safety Valve & Max[imum] Credits        1.77 years

The trial judge further instructed the jury with explanations for the terms "RED %," "RED % Applied," "With Max[imum] Credits," "Safety Valve," and "Safety Valve & Max[imum] Credits." He then told the jury that "Whether a defendant is actually released from incarceration on the date when first eligible for release is a discretionary decision made by the Board of Paroles and is based on many factors. The Board of

---

[1]T.C.A. § 40-35-201(b)(2)(A)(I) (1997) provides that "[w]hen a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable."

[2]The actual charge to the jury was not transcribed. The record contains a copy of the written charge, however, from which we quote.

Paroles has the authority to require a defendant to serve the entire sentence imposed by the Court."

As pointed out by the defendant, persons sentenced to life imprisonment for first-degree murder must serve at least twenty-five full calendar years before becoming eligible for parole. See T.C.A. § 40-35-501(h)(1). Furthermore, our criminal code requires a trial court to instruct the jury in a first-degree murder case that a defendant receiving a life sentence shall not be eligible for parole until he has served at least twenty-five full calendar years of his life sentence. See T.C.A. § 39-13-204(e)(2).

In State v. Cook, 816 S.W.2d 322 (Tenn. 1991), the jury was mistakenly instructed that the defendant's range of punishment was Range I when the defendant's crimes were statutorily required to be sentenced at Range II. Our Supreme Court held that T.C.A. § 40-35-201(b) "gives a defendant a claimable statutory right to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence." Id. at 326. It further held that this right "would be lost if the defendant were to be sentenced to punishments greater than what the jury finding guilt was instructed would be imposed" and that denying the defendant this right "constitutes prejudice to the judicial process, rendering the error reversible under Rule 36(b) T.R.A.P." Id. at 327.

In the instant case, the trial court did not err in its instruction to the jury on range of punishment. However, the instructions did inform the jury that the defendant could be released on parole in less than two years when he was, in fact, ineligible for parole until after serving twenty-five years. This case is distinguishable from those in which the defendant is eventually determined to be a Range II offender but the jury was instructed on the minimum Range I sentence and the maximum Range II sentence. See, e.g., State v. Smith, 926 S.W.2d 267, 271 (Tenn. Crim. App.

1995). In those cases, the defendant may indeed become ineligible for a Range I sentence upon later proof submitted at the sentencing hearing. At the time of trial, however, such defendants' sentencing status has not been established and the state's proof for a higher range may fail. In other words, in those cases, the instructed minimum sentence is still a possibility. In this case, the defendant was ineligible for parole before serving twenty-five years at the time of trial. Because the defendant could not, under any circumstances, be eligible for release in 1.77 years, he was subjected, in effect, to a greater sentence than that about which the jury was informed.

Also, the jury in this case was instructed not only on the offense of first-degree felony murder but also on the lesser offenses of reckless homicide and criminally negligent homicide. As the Cook court recognized, "It is widely perceived by those who observed the operations of our trial courts in previous times, when juries had the additional responsibility of setting punishment, that often they seemed to find guilt of a crime not necessarily most strongly suggested by the evidence, but one the punishment for which suited their sense of justice in the case." Cook, 816 S.W.2d at 326. In the instant case, it is conceivable that, had the jury known that a first-degree murder conviction carried a minimum service of twenty-five years, it would have chosen to convict the defendant of a lesser offense. Cf. State v. Winford Lee Pipkin, No. 01C01-9605-CR-00210 (Tenn. Crim. App. filed Dec. 4, 1997, at Nashville) (where no lesser offenses were charged to the jury, the trial court's failure to inform the jury that the defendant would not be eligible for sentence reduction credits did not constitute reversible error).

In State v. Jerry Ray Cooper, No. 01C01-9604-CC-00150 (Tenn. Crim. App. filed Nov. 17, 1997, at Nashville), this Court considered a jury charge given pursuant to T.C.A. § 40-35-201(b) which included the minimum release eligibility date but omitted the paragraph stating that the Board of Paroles has the authority to

-5-

require the defendant to serve his entire sentence. As a result, the trial court had thereby given "an inaccurate statement of the law and mis[led] the jury regarding the likelihood of when [the] defendant would be released." Accordingly, this Court reversed the conviction and remanded the case for a new trial.[3]

The instructional error committed in this case was similarly misleading to the jury. The jury was informed that, even if it convicted the defendant of the greatest offense with which he was charged, he could be paroled in less than two years. Misinformation of that magnitude resulted in prejudice to the judicial process. See T.R.A.P. 36(b). Accordingly, we have no choice but to reverse the conviction below and remand this matter for a new trial.

In his next issue, the defendant challenges the constitutionality of the statute under which a jury is instructed about the range of punishments for the offenses charged, T.C.A. § 40-35-201(b)(2)(A)(I) (1997). Our Supreme Court has recently addressed this issue and found the statute constitutional. State v. King, 973 S.W.2d 586, 592 (Tenn. 1998). This issue is, therefore, without merit.

Finally, we address the defendant's contention that the evidence is not sufficient to sustain his conviction. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We must review the evidence in the light most favorable to the prosecution in determining

---

[3]We note that two separate concurring opinions in this case reached this result based on finding the statute unconstitutional.

whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. See id. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the state, and a presumption of guilt replaces the presumption of innocence. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The proof in this case established that the defendant confessed at least twice to the crime of which he was convicted. Testimony and physical evidence corroborated these confessions. See Ashby v. State, 139 S.W. 872, 875 (1911) (holding that confessions corroborated by other evidence, direct or circumstantial, will support a conviction). The proof of the defendant's guilt is not only sufficient, it is overwhelming. This issue is without merit.

For the reasons set forth above, the defendant's conviction is reversed and this matter is remanded for a new trial.

_____
PAUL G. SUMMERS, Judge

CONCUR:

-8-

_____
DAVID H. WELLES, Judge


_____
JOE G. RILEY, Judge